## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARROWHEAD GENERAL** | : | **CIVIL ACTION NO. 1:16-CV-1138** |
| **INSURANCE AGENCY, INC.,** | : | |
| | : | **(Chief Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LINCOLN GENERAL** | : | |
| **INSURANCE COMPANY,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

The instant motion (Doc. 2) for preliminary injunction is filed by plaintiff

Arrowhead General Insurance Agency, Inc. ("Arrowhead").  Arrowhead seeks to

enjoin Lincoln General Insurance Company ("Lincoln General") from drawing on a

standby letter of credit issued as security against default on Arrowhead's

underlying contractual obligations to Lincoln General.  The letter of credit is due to

expire on June 30, 2016 as a consequence of Arrowhead's nonrenewal.  The court

will grant Arrowhead's motion.

## I.   Background

Arrowhead commenced this matter with the filing of a complaint (Doc. 1) on

June 14, 2016, contemporaneous with a motion (Doc. 2) for preliminary injunction.

Arrowhead petitions the court for declaratory judgment that Lincoln lacks a right to

draw on the disputed letter of credit, pursuant to 28 U.S.C. § 2201 and Federal Rule

of Civil Procedure 57.  Fed. R. Civ. P. 57; (see Doc. 1 at 1, 8).  Arrowhead additionally

seeks permanent injunctive relief enjoining Lincoln General from drawing on the

letter of credit without the legal justification established by the parties' inceptive contract.  (See Doc. 1 at 8).

In the motion *sub judice*, Arrowhead requests the court to enjoin Lincoln General from drawing on the letter of credit.  (See Doc. 2 ¶¶ 3-6).  The court held a preliminary injunction hearing on June 27, 2016, taking evidence in the form of documentary exhibits and witness testimony.  The parties filed briefs in support of their respective positions prior to the hearing.  (See Docs. 10, 11).  With the record closed, Arrowhead's motion for preliminary injunction is ripe for disposition.

## II.   **Findings of Fact**[1]

Lincoln General is a Pennsylvania-based property and casualty insurance company presently in liquidation.  (Doc. 1 ¶¶ 6, 18; Doc. 11-2).  Arrowhead is an insurance program administrator domiciled in Minnesota with its principal place of business in California.  (Doc. 1 ¶ 5).  In 2004, Lincoln General and Arrowhead entered into a written agreement entitled the Program Manager Agreement ("the Agreement").  (Doc. 1 ¶ 10; Docs. 1-1 to 1-2).  Under the Agreement, Arrowhead acted as Lincoln General's managing general agent, underwriting policies and billing and collecting premiums for certain lines of insurance.  (Doc. 1 ¶ 10; Docs. 1-1 to 1-2).

---

[1] Consistent with the directive of Federal Rule of Civil Procedure 65(d), the following factual narrative represents the court's findings of fact as derived from the record evidence.  FED. R. CIV. P. 65(d).  Citations to the record include exhibits filed in advance of the June 27, 2016 preliminary injunction hearing, which reflect docket numbers assigned by the Electronic Case Filing system; exhibits introduced at the hearing ("6/27/16 Hr'g Ex. __"); and witness testimony provided at the hearing ("6/27/16 Hr'g (_____)").  As of the date of this opinion, an official transcript of the hearing is not yet available.

To induce Lincoln General to enter the Agreement, Arrowhead pledged that it would "[p]ost security in the total amount of $500,000 in the form of an Irrevocable Letter of Credit." (Doc. 1-2 at 11).[2]  Said guarantee further provided that, "[i]n the event of default on the financial obligations required by the Agreement, [Lincoln General] . . . shall be entitled to offset monies owed by the Manager using the Manager's security." (Id.)  After gradually expanding the scope of the parties' relationship, Lincoln General terminated the Agreement between 2008 and 2009.  (Doc. 1 ¶ 11; Doc. 2 ¶¶ 4-5).  Arrowhead maintained various contractual obligations to Lincoln General thereafter, including continuation of the letter of credit and oversight of active surety bonds.  (See Doc. 10-1 at 2; Doc. 11-1 at 18, 20-22, 31-32; Doc. 15-4; 6/27/16 Hr'g Ex. 2).

On May 14, 2013, Lincoln General initiated arbitration proceedings against Arrowhead, raising manifold claims for breach of contract and indemnification under the Agreement and asserting losses in excess of $165,000,000.  (Doc. 1 ¶ 14; Doc. 11-3).  The arbitration panel rendered a final decision on August 26, 2015, following substantial motion practice, extensive discovery, and a twelve-day hearing.  (Doc. 1 ¶¶ 14-15).  The panel awarded $2,586,572.62 to Lincoln General on one class of indemnification claims and otherwise resolved the matter in Arrowhead's favor.   See Arrowhead Gen. Ins. Agency, Inc. v. Lincoln Gen. Ins. Co., No. 1:15-CV-1726, Doc. 3 (M.D. Pa.) ("Arrowhead I").

---

[2] For ease of reference, citations to exhibits entered on the docket will reflect pagination assigned by the Electronic Case Filing system, whereas citations to the parties' briefs will correspond to the documents' original word processing pagination.

Claims concerning Arrowhead's purported mismanagement of Lincoln General's surety program were among those denied by the arbitration panel. (See Doc. 1-1 at 6-7; Doc. 11-1 at 24; Doc. 11-3 at 9-11). Specifically, in its request for arbitration, Lincoln General alleged that Arrowhead administratively terminated certain unexonerated surety bonds on which Lincoln General remained obligated—designated as "preclosed bonds"—and thereafter failed to collect and remit outstanding premiums to Lincoln General. (Doc. 11-3 at 9-11; 6/27/16 Hr'g (Miller)). The arbitration award concluded, "With respect to the breach of contract claim relating to the preclosed bonds produced from the ESurety system by Arrowhead during this arbitration, all claims are [denied.]" (Doc. 11-1 at 24). Arrowhead filed a petition to confirm the arbitration award with this court on September 2, 2015. Arrowhead I, No. 1:15-CV-1726, Doc. 3. Lincoln General responded by moving to vacate the award. Id., Doc. 18.

On September 30, 2015, Arrowhead submitted to Lincoln General written "Notice of Termination of Managerial Responsibilities," representing that it would "no longer 'continue to be the agent of [Lincoln General] . . . in servicing Policies and binders in force on or before the . . . [2009] termination' of the . . . Agreement." (Doc. 10-1 at 2 (quoting the Agreement)). The following month, Arrowhead transmitted a spreadsheet to Lincoln General listing uncollected premiums due on active bonds which were issued under the Agreement on or before 2009. (Doc. 15 ¶ 4; Doc. 15-4; 6/27/16 Hr'g Ex. 2; 6/27/16 Hr'g (Miller)). The spreadsheet calculated the total amount owed to Lincoln General thereunder as $1,583,282.25. (Doc. 15-4

4

at 38; 6/27/16 Hr'g Ex. 2).  To date, Lincoln General has neither demanded

reparation nor requested arbitration with respect to said premiums.  (6/27/16 Hr'g

(Miller)).

On November 5, 2015, the Commonwealth Court of Pennsylvania ordered

Lincoln General into liquidation, appointing the Insurance Commissioner of the

Commonwealth of Pennsylvania as the statutory liquidator and instructing the

liquidator to "take possession of Lincoln General's . . . property, business and

affairs."  *In re* Lincoln Gen. Ins. Co., No. 1 LIN 2015, at *1 (Pa. Commw. Ct. Nov. 5,

2015); (Doc. 11-2 at 1).  Citing Article V of the Pennsylvania Insurance Department

Act, 40 PA. CONS. STAT. §§ 221.1–221.63, the order directed the liquidator as follows:

> (a) Inform all banks, investment bankers, companies,
> or other entities or other persons having in their
> possession assets which are, or may be, the property of
> Lincoln General, unless otherwise instructed by the
> Liquidator, to deliver the possession of the same
> immediately to the Liquidator, and not disburse,
> convey, transfer, pledge, assign, hypothecate,
> encumber or in any manner dispose of the same
> without the prior written consent of, or unless directed
> in writing by, the Liquidator.
> (b) Inform all producers and other persons having sold
> policies of insurance issued by Lincoln General to
> account for and pay all unearned commissions and all
> premiums, collected or uncollected, for the benefit of
> Lincoln General directly to the Liquidator within 30
> days of notice of this Order . . . .

*In re* Lincoln Gen. Ins. Co., No. 1 LIN 2015, at *3; (Doc. 11-2 at 3).  A representative

of the liquidator contacted Arrowhead by written correspondence dated

December 3, 2015 seeking Arrowhead's disavowal of its notice of termination of

post-Agreement managerial responsibilities.  (Doc. 15-1).  The representative

5

asserted that Arrowhead must "comply with all [of] its surviving obligations" pursuant to both the Agreement and the terms of the liquidation order.  (Id. at 5; 6/27/16 Hr'g (Buckman)).

This court stayed proceedings in Arrowhead I through May 26, 2016 upon notice of the liquidation.  Arrowhead I, No. 1:15-CV-1726, Docs. 27, 34, 37. Subsequent to the liquidator's determination not to intervene therein, the court lifted the stay and reinstated the petition to confirm arbitration award and the motion to vacate same.  Id., Doc. 37.  The parties' supplications in Arrowhead I are ripe for review.

The instant dispute between Arrowhead and Lincoln General centers upon the $500,000 letter of credit secured by Arrowhead pursuant to the Agreement.  The letter of credit—issued from U.S. Bank National Association ("U.S. Bank") to Lincoln General—provides that:

> It is a condition of this letter of credit that it shall be
> considered automatically extended without
> amendment for one year from the present or any future
> expiration date unless we notify you in writing by
> courier at least sixty (60) days prior to any such
> expiration date that this letter of credit will not be
> renewed.

(Doc. 1-3 at 2).  The letter establishes June 30, 2010 as the initial expiration date. (Id.)  It contains minimal presentment requirements, to wit: "This original letter of credit must accompany the drawing. . . .  Drafts drawn under this credit must bear the clause: 'Drawn under U.S. Bank National Association Irrevocable Standby Letter of Credit Number SLCPPDX04725.' "  (Id. at 3).  Further, the letter certifies that "draft(s) drawn and/or documents presented and negotiated under and in

compliance with the terms of this irrevocable standby letter of credit will be duly honored upon presentation to us." (Id.)  Arrowhead permitted the letter to renew annually from June 2010 through June 2015.  (See Doc. 2-1 ¶¶ 12-13).

On March 24, 2016, U.S. Bank notified Lincoln General that the letter of credit would not be renewed, prompting the letter's forthcoming expiration on June 30, 2016.  (Doc. 11-1 at 11-12; see also Doc. 2-1 ¶ 13).  Arrowhead initiated U.S. Bank's dissolution thereof.[3]  (Doc. 2-1 ¶ 13).  Lincoln General and Arrowhead have exchanged numerous communications *ad interim*, wherein they proffer wholly divergent views of the propriety of nonrenewal under the circumstances.  (See Doc. 11-1 at 13-32).

## III.   Legal Standard

Preliminary injunctive relief is an extraordinary remedy and should issue in only limited circumstances.  See Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994).  Four factors inform a district court's decision whether to issue a preliminary injunction: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest."  Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012)

---

[3] Counsel for Arrowhead represented during the hearing that U.S. Bank will decline to extend the letter of credit notwithstanding any application by Arrowhead thereupon.  The reason for U.S. Bank's independent election to discontinue the letter is unknown to the parties.

(quoting <u>Crissman v. Dover Downs Entm't Inc.</u>, 239 F.3d 357, 364 (3d Cir. 2001)).

The moving party bears the burden of establishing that the greater balance of these

factors weighs in its favor.  <u>See</u> <u>Constructors Ass'n of W. Pa. v. Kreps</u>, 573 F.2d 811,

815 (3d Cir. 1978).  A movant's failure to demonstrate a likelihood of success on the

merits or irreparable harm in the absence of preliminary injunctive relief renders a

preliminary injunction inappropriate.  <u>See</u> <u>Grill v. Aversa</u>, 908 F. Supp. 2d 573, 591

(M.D. Pa. 2012).

## IV.   <u>Discussion</u>

Lincoln General resolves to withdraw the full amount of the letter of credit if

it is not extended forthwith, asserting that Arrowhead has defaulted on its

obligations under the Agreement by failing to remit premiums on the open surety

bonds that became due subsequent to arbitration.  (6/27/16 Hr'g (Buckman)).

Arrowhead refuses Lincoln General's entreaty, riposting that Lincoln General's

professed justification for drawing on the letter of credit is barred by claim and

issue preclusion.  (Doc. 10 at 9-15).  The parties' precipitous standoff culminates in

the motion now before the court.

### A.   **Reasonable Probability of Success on the Merits**

To establish a reasonable probability of success on the merits, the moving

party must produce sufficient evidence to satisfy the essential elements of the

underlying cause of action.  <u>See</u> <u>Punnett v. Carter</u>, 621 F.2d 578, 582-83 (3d Cir.

1980).  The district court must examine the legal principles controlling the claim

and the potential defenses available to the opposing party.  <u>See</u> <u>BP Chems. Ltd. v.</u>

<u>Formosa Chem. & Fibre Corp.</u>, 229 F.3d 254, 264 (3d Cir. 2000).  The mere

possibility that a claim might be defeated does not preclude a finding of probable success if the evidence clearly satisfies the essential prerequisites of the cause of action.  Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 173 (3d Cir. 2001).

In the matter *sub judice*, Arrowhead must establish that Lincoln General's claim for drawing on the letter of credit "has no basis in fact," and thus that Lincoln General "has no bona fide claim to payment."  Roman Ceramics Corp. v. Peoples Nat'l Bank, 714 F.2d 1207, 1213 (3d Cir. 1983) (quoting Intraworld Indus., Inc. v. Girard Trust Bank, 336 A.2d 316, 325 (Pa. 1975)).  Arrowhead does not dispute that Lincoln General can satisfy the facial requirements of the letter of credit by marshaling the requisite documentation for presentment to U.S. Bank.  Rather, the parties' diametric arguments turn upon a discrete inquiry: whether Lincoln General is estopped from asserting that Arrowhead defaulted under the Agreement by failing to pay premiums which postdate the period subject to arbitral review.

Collateral estoppel, also referred to as issue preclusion, specifically bars relitigation of an issue that was conclusively determined in a prior adjudication and that was essential to the original judgment.  Witkowski v. Welch, 173 F.3d 192, 198 (3d Cir. 1999); Venuto v. Witco Corp., 117 F.3d 754, 758 (3d Cir. 1997).  Pennsylvania courts apply a four-part test derived from § 27 of the Second Restatement to determine whether collateral estoppel bars a potential claim.  See RESTATEMENT (SECOND) OF JUDGMENTS § 27 (AM. LAW INST. 2016).  An issue will be precluded if: (1) the issue decided in the prior adjudication was identical to the issue presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with the party to the

prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the applicable issue in the prior adjudication.  See Witkowski, 173 F.3d at 199; Kelley v. TYK Refractories Co., 860 F.2d 1188, 1194 (3d Cir. 1988); see also Metro. Edison Co. v. Pa. Pub. Util. Comm'n, 767 F.3d 335, 351 (3d Cir. 2014).  Under Pennsylvania law, "arbitration proceedings and their findings are considered final judgments for the purposes of collateral estoppel."  Witkowski, 173 F.3d at 199; Brody v. Hankin, 299 F. Supp. 2d 454, 459 (E.D. Pa. 2004), rev'd on other grounds, 145 F. App'x 768 (3d Cir. 2005).  Thus, an arbitration award may collaterally estop litigation of identical claims.

According to Arrowhead, "Lincoln General specifically claimed [in the arbitration proceedings] that Arrowhead had breached the [Agreement] . . . by not collecting and paying Lincoln General premium [owed] on bonds that had not been exonerated by the obligees."  (Doc. 10 at 11).  Arrowhead submits that this issue is determinative of Lincoln General's instant claim.  In response, Lincoln General presented testimony at the hearing which endeavored to distinguish between preclosed surety bonds and those undergirding its current claims.  (6/27/16 Hr'g (Miller)).  The record indicates that both are unexonerated and may result in uncollected or unremitted premiums; any variation therebetween derives from Arrowhead's administrative classification system.  (Id.)

Lincoln General acknowledges that the gravamen of the preclosed bond claims adjudicated by the arbitrators was Arrowhead's ostensible failure to collect and remit premiums: namely, the same challenge which Lincoln General now raises to evidence Arrowhead's default.  (Id.)  Lincoln General additionally concedes that

all surety bonds serviced by Arrowhead pursuant to the Agreement—preclosed and

any and all others—originated before or during 2009.  (Id.)  Separate and apart from

alleged default under the terms of the Agreement, Lincoln General asserts that

Arrowhead's nonpayment of post-arbitration premiums contravenes the liquidation

order.  (See Doc. 11-1 at 27-32).

In addition to its estoppel argument, Arrowhead contends that Lincoln

General manufactured the instant allegations to perpetuate its access to

Arrowhead's $500,000 security.  Arrowhead points to Lincoln General's pre-hearing

memorandum, in which Lincoln General states:

> Arrowhead, not the Estate, . . . disrupted the status quo
> and created the emergency when it issued a notice of the
> imminent nonrenewal of the . . . [letter].  Until Arrowhead
> unilaterally took that action, [Lincoln General] . . . had not
> and did not intend to draw on the [letter] . . . until a final
> determination of whether and how much unpaid
> premium may be owed by Arrowhead to the Estate.

(Doc. 11 at 2 n.1).  Arrowhead notes that "Lincoln General has never made a

demand on Arrowhead for any portion of the $1.5 million, nor has it even attempted

to make a showing that Lincoln General is entitled to that sum or that Arrowhead is

in default of any of its obligations under the [Agreement]."  (Doc. 10 at 6).  At the

hearing, Lincoln General confirmed that it has not requested arbitration regarding

the alleged delinquency.

The preliminary evidence at bar supports Arrowhead's remonstrations.

Upon careful consideration of the parties' submissions, the court perceives no

material distinction between the claims previously arbitrated, involving preclosed

bonds, and those presently asserted by Lincoln General, concerning open and

active bonds.  Moreover, the prior arbitration proceedings comprised substantial motion practice and discovery over the course of many months followed by a twelve-day hearing, affording the parties a full and fair opportunity to present evidence and legal argument in support of their positions.  See Witkowski, 173 F.3d at 199.  The court finds that Arrowhead has demonstrated the prepotency of its collateral estoppel position.[4]  Further, the necessarily hurried nature of Lincoln General's challenge lends additional support to Arrowhead's contention, to wit: that Lincoln General has placed the proverbial cart before the horse in a superficial attempt to preserve its access to collateral.  The court thus concludes that Lincoln General's claim for drawing on the letter of credit is likely without basis in fact. See Roman Ceramics, 714 F.2d at 1213.  Arrowhead has established a likelihood of success on the merits with respect to its claim.

### B.      Irreparable Harm to Arrowhead

Irreparable injury is harm of such an irreversible character that prospective judgment would be inadequate to make the moving party whole.  See Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).  The mere risk of injury is not sufficient to meet this standard.  Rather, the moving party must establish that the harm is imminent and probable.  Anderson, 125 F.3d at 164.  Harm that may be contained effectively only through immediate injunctive relief is properly deemed "irreparable."  Instant

---

[4] The court need only determine that the moving party would likely succeed on at least one claim to issue injunctive relief.  See Trefelner ex rel. Trefelner v. Burrell Sch. Dist., 655 F. Supp. 2d 581, 590 (W.D. Pa. 2009); First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc., 155 F. Supp. 2d 194, 234 (M.D. Pa. 2001).  The court thus declines to address Arrowhead's cognate claim preclusion argument.

Air Freight, 882 F.2d at 801.  The moving party must show that its suppositive injury is not compensable by subsequent monetary damages.  Adams v. Freedom Forge Corp., 204 F.3d 475, 485 (3d Cir. 2000).

Arrowhead contends that it will suffer irreparable harm if the court denies its request for injunctive relief in light of Lincoln General's insolvency.  (See Doc. 10 at 15-16).  Specifically, Arrowhead asserts that Lincoln General's entry into liquidation raises "the undeniable specter that Arrowhead will not be able to recover its $500,000 if Lincoln General wrongly draws on the [letter of credit.]"  (Id. at 16).  Lincoln General vilipends Arrowhead's entreaty as "illusory . . . [and] entirely Arrowhead's own making," arguing that Arrowhead's economic interests will not suffer irremediable injury.  (Doc. 11 at 2).  The record supports Arrowhead's position.

The court notes that Kandi Buckman, Chief Liquidation Office for Lincoln General, testified at the hearing that Lincoln General will segregate any funds drawn from the letter of credit in a separate account expressly established for secured funds.  (6/27/16 Hr'g (Buckman)).  This money would not be comingled with general assets of Lincoln General's estate.  (Id.)  Pending resolution of the instant case, Lincoln General would remit any improperly drawn funds to Arrowhead.  (Id.)

Despite the assurances of Lincoln General's Chief Liquidation Officer, there is an enduring possibility that unsecured creditors or other third parties may attempt to gain access to even the most judiciously segregated funds.  The inherent risks associated with the transfer and management of assets militates in favor of Arrowhead.  The imminent transfer of funds to an insolvent beneficiary is

sufficient to support an award of injunctive relief.  See Gerardi v. Pelullo, 16 F.3d

1363, 1373-74 (3d Cir. 1994); Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186,

205-06 (3d Cir. 1990); see also Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d

245, 250 (2d Cir. 1999).

Consequent to Lincoln General's insolvency, Arrowhead may be unable to

recover proceeds drawn from the letter of credit if Arrowhead is not in default of its

obligations thereunder.  Under the totality of the evidence, the court finds that

Arrowhead will likely suffer irreparable injury unless it receives immediate relief.

### C.      Balancing of Hardships

To determine whether granting preliminary injunctive relief would result in

greater harm to the nonmovant, the court must examine the terms of the proposed

injunction, consider the respective positions of the parties, and assess the

ramifications of the requested relief.  See Novartis Consumer Health, Inc. v.

Johnson & Johnson–Merck Consumer Pharms. Co., 290 F.3d 578, 596-97 (3d Cir.

2002).  Injunctive relief should generally be denied if the potential harm to the

nonmovant outweighs the potential benefits to be bestowed upon the movant.

See Novartis, 290 F.3d at 596-97.

Arrowhead argues that the balance of the equities favors enjoining Lincoln

General from drawing on the letter of credit.  (See Doc. 10 at 17-18).  Arrowhead

avers that any potential damage to Lincoln General is mitigated by Arrowhead's

willingness to post an appropriate bond, as required by Federal Rule of Civil

Procedure 65.  FED. R. CIV. P. 65(c).  During the hearing, counsel for both parties

acknowledged that requiring Arrowhead to post security in the amount of the

14

expiring letter of credit would ameliorate Lincoln General's foremost concerns. On the present record, the court agrees. In the exercise of its equitable power, the court concludes that this carefully fashioned form of relief takes into account the unusual factual circumstances of the instant matter and stabilizes the parties' competing interests.

### D.   Public Interest

The public interest inquiry requires the court to look beyond the parties to gauge the preliminary injunction's potential impact on the populace. See Novartis, 290 F.3d at 596-97. Specific, tangible effects on third parties should constitute the focus of the court's determination. See Council of Alt. Political Parties v. Hooks, 121 F.3d 876, 883-84 (3d Cir. 1997).

Arrowhead contends that "[i]t would harm the public confidence, and the public interest, for a liquidating insurance company to seize funds to which [it] is not entitled, and for the party from whom those funds were seized to have little to no recourse because of the liquidation." (Doc. 10 at 18). The court concurs that the public interest is best served by equitable relief which safeguards the financial interests of both parties and preserves the status quo pending resolution of the underlying claims.

V.      **<u>Conclusion</u>**

Arrowhead's motion (Doc. 2) for preliminary injunction will be granted.  An

appropriate order will issue.


                                          /S/ CHRISTOPHER C. CONNER
                                          Christopher C. Conner, Chief Judge
                                          United States District Court
                                          Middle District of Pennsylvania

Dated:        June 28, 2016