IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARROWHEAD GENERAL INSURANCE AGENCY, INC.,** | : : : : | CIVIL ACTION NO. 1:16-CV-1138 (Chief Judge Conner) |
| Plaintiff, | : : | |
| v. | : : | |
| **LINCOLN GENERAL INSURANCE COMPANY,** | : : : : | |
| Defendant | : | |

## MEMORANDUM

Defendant Lincoln General Insurance Company ("Lincoln General") wishes to draw upon a letter of credit posted by plaintiff Arrowhead General Insurance Agency, Inc. ("Arrowhead") to offset an alleged loss Lincoln General suffered on active bonds that Arrowhead managed. Before the court is Lincoln General's motion (Doc. 28) to compel arbitration and stay these proceedings. Lincoln General seeks arbitration to determine whether Arrowhead defaulted on a number of active bonds that were not litigated during the parties' first arbitration. (See Docs. 28-29). Arrowhead argues that this issue was settled during the parties' first arbitration and that Lincoln General's claims are barred by *res judicata*. (See Doc. 30). Lincoln General avers that the arbitrator, not the court, should decide whether the claims are barred, while Arrowhead contends that the *res judicata* determination belongs to the court. (See Docs. 29, 30, 32). For the reasons that follow, the court will deny the motion.

## I. Factual Background & Procedural History

### A. The Parties and the Contract

Lincoln General is a property and casualty insurance company domiciled in Pennsylvania that is presently in liquidation. (Doc. 1 ¶¶ 6, 18; Doc. 27 ¶ 6). Arrowhead is an insurance program administrator based in Minnesota with its principal place of business in California. (Doc. 1 ¶ 5). On Janurary 1, 2004, Lincoln General and Arrowhead entered into a written contract entitled the Program Manager Agreement ("the Agreement"). (Doc. 1 ¶ 10; Doc. 27 ¶ 10; see Docs. 1-1, 1-2). Lincoln General appointed Arrowhead as its managing general agent, with the responsibilities of underwriting policies and billing and collecting premiums for specified lines of insurance. (Doc. 1 ¶ 10; Doc. 27 ¶ 10; see Docs. 1-1, 1-2).

Pursuant to the Agreement, Arrowhead posted an Irrevocable Letter of Credit as security in the amount of $500,000. (Doc. 1-2 at 11). The pledge granted: "In the event of default on the financial obligations required by the Agreement, [Lincoln General] . . . shall be entitled to offset monies owed by the Manager using the Manager's security." (Id.) Lincoln General terminated the Agreement between 2008 and 2009. (Doc. 1 ¶ 11; Doc. 27 ¶ 11).

### B. The Arbitration Award

After conducting an extensive audit of the business managed by Arrowhead, Lincoln General initiated arbitration against Arrowhead on May 14, 2013 under the Agreement's mandatory arbitration clause. (Doc. 1 ¶¶ 12-14; Doc. 27 ¶¶ 12-14; Doc. 29 at 3, 5; Doc. 30 at 3). Lincoln General raised assorted claims for breach of contract and indemnification under the Agreement and averred losses in excess of

$165,000,000. (Doc. 1 ¶ 14; Doc. 29 at 5; Doc. 30 at 3; see also Doc. 11-3). Specifically, Lincoln General included claims regarding Arrowhead's purported mismanagement of Lincoln General's surety program. (Doc. 11-3 at 9-11; Doc. 29 at 5; Doc. 30 at 4). Lincoln General posited that Arrowhead administratively terminated certain "preclosed" bonds on which Lincoln General remained obligated, but Arrowhead failed to collect and remit outstanding premiums to Lincoln General. (Doc. 11-3 at 9-11).

The arbitration panel issued a final decision on August 26, 2015, following extensive motion practice, lengthy discovery, and a twelve-day hearing. (Doc. 1 ¶¶ 14-15). Lincoln General received an award of $2,586,572.62 on one class of indemnification claims, and the panel otherwise resolved the matter in Arrowhead's favor. See Arrowhead Gen. Ins. Agency, Inc. v. Lincoln Gen. Ins. Co., No. 1:15-CV-1726, Doc. 3 (M.D. Pa. Sept. 2, 2015) ("Arrowhead I"). The arbitration award concluded, "With respect to the breach of contract claim relating to the preclosed bonds produced from the ESurety system by Arrowhead during this arbitration, all claims are [denied.]" (Doc. 11-1 at 24; Doc 29 at 5; see also Doc. 30 at 4). Arrowhead petitioned the court to confirm the arbitration award. Arrowhead I at Doc. 3. The court granted Arrowhead's petition and entered judgment in favor of Arrowhead on August 5, 2016. Id. at Doc. 39.

C.    **Procedural History**

Arrowhead issued a notice of nonrenewal on the Letter of Credit, which was set to expire on June 30, 2016. (Doc. 1 ¶ 21; Doc. 29 at 29; Doc. 30 at 5). In response, Lincoln General asserted that it would draw the entire amount of the Letter of

Credit in advance of the expiration date, alleging that Arrowhead still owed Lincoln General money for active bonds. (Doc. 29 at 8-9; Doc. 30 at 5). This warning prompted Arrowhead to file a complaint (Doc. 1) commencing the instant matter on June 14, 2016. Arrowhead requests a declaratory judgment that Lincoln lacks the right to draw on the disputed Letter of Credit and a permanent injunction prohibiting Lincoln General's threatened draw on the Letter of Credit pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. (See Doc. 1 at 1, 8). Arrowhead contemporaneously filed a motion (Doc. 2) for a preliminary injunction to prevent Lincoln General from drawing upon the Letter of Credit, arguing that any justification Lincoln General has for drawing on same is precluded by *res judicata*. (Doc. 2 at ¶¶ 3-6; Doc. 10 at 5). The court granted the preliminary injunction by order (Doc. 23) dated June 28, 2016, and directed Arrowhead to post a $500,000 bond pending resolution of this matter.

On August 5, 2016, Lincoln General moved to compel arbitration regarding Arrowhead's obligations under the Agreement as to the alleged default on the disputed bonds, stating that *res judicata* determinations are for the arbitrator. (Doc. 28; Doc. 29 at 29). The motion is now fully briefed (Docs. 29, 30, 32) and ripe for disposition.

## II. Legal Standard

Granting a motion to compel arbitration accomplishes a "summary disposition of the [factual] issue" of the existence of an agreement to arbitrate; thus, courts should consider the facts in the light most favorable to the nonmoving party, giving that party "the benefit of all reasonable doubts and inferences that may

arise." Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 & n.9 (3d Cir. 1980), quoted with approval in Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 106 (3d Cir. 2000). In the context of a motion to compel arbitration, the court may consider the pleadings, documents of uncontested validity, and affidavits or depositions submitted by either party. See id. (citing FED. R. CIV. P. 56(c)).

### III. Discussion

Lincoln General contends that Arrowhead should be compelled to arbitrate the parties' dispute because a *res judicata* determination concerning a prior arbitration is for the arbitrator, not the court. Arrowhead argues that the *res judicata* inquiry concerns not just a prior arbitration, but also a federal judgment, necessitating resolution by the court.

This disagreement of arbitrability is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. Quilloin v. Tenet Health Sys. Phila., Inc., 673 F.3d 221, 228 (3d Cir. 2012) (quoting Khan v. Dell, Inc., 669 F.3d 350, 354 (3d Cir. 2012)). Federal policy, as embodied by the FAA, favors arbitration agreements. Opalinski v. Robert Half Int'l Inc., 761 F.3d 326, 331 (3d Cir. 2014), cert. denied, 135 S. Ct. 1530 (2015); Quilloin, 673 F.3d at 228; Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009). A court asked to stay proceedings pending arbitration must evaluate: (1) whether the parties formed a valid agreement to arbitrate, and (2) whether the dispute in question falls within the scope of the agreement. See Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (quoting Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 527 (3d Cir. 2009)); Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 54-55

5

(3d Cir. 2001); John Hancock Mutual Life Ins. Co. v. Olick, 151 F.3d 132, 139 (3d Cir. 1998).

There is no controversy as to the validity of the arbitration agreement *sub judice*. The arbitration panel granted the arbitration award confirmed by the court in Arrowhead I pursuant to the mandatory arbitration clause in the parties' Agreement. (Doc. 29 at 3; Doc. 30 at 3). Hence, the court will consider the second question, to wit: whether the dispute falls within the scope of the agreement.

In reviewing whether the instant conflict falls within the scope of the agreement, the court is mindful of the strong federal policy in favor of arbitration. See Olick, 151 F.3d at 137 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983)). Affirmative defenses, such as a *res judicata* objection based on a prior arbitration proceeding, are normally considered a component of the dispute to be decided by the arbitrator. See Interdigital Commc'ns Corp. v. Fed. Ins. Co., 308 F. App'x 593, 596 (3d Cir. 2009) (nonprecedential); King v. Advance Am., No. 07-CV-237, 2011 WL 3861898, at *7 (E.D. Pa. Aug. 31, 2011); see also Olick, 151 F.3d at 137-140. But the Third Circuit Court of Appeals has created a limited exception to this rule: when the preclusive effect of a prior federal judgment is at issue, the district court, not the arbitrator, must make *res judicata* rulings. See Olick, 151 F.3d at 137-138; King, 2011 WL 3861898, at *7; Am. Home Assur. Co. v. Popowicz, No. 3-CV-0768, 2003 WL 21652287, at *1 (E.D. Pa. May 28, 2003); see also GGIS Ins. Servs., Inc. v. Lincoln Gen. Ins. Co., No. 1:10-CV-1000, 2012 WL 1164994, at *3 (M.D. Pa. Apr. 9, 2012).

Notwithstanding Lincoln General's adamant assertions to the contrary, the law in the Third Circuit is quite clear. The Third Circuit expressly adopted a narrow exception to the general rule favoring arbitration when considering *res judicata* implications of a previous arbitration. Olick, 151 F.3d at 137-138. As the integrity and finality of prior judicial decisions must be upheld, "federal courts must intervene in the arbitration process when faced with *res judicata* objections stemming from a prior federal judgment." Id. at 139. The court finds no legitimate reason to depart from long standing and uncontroverted precedent in the Third Circuit.[1] The *res judicata* analysis *sub judice* concerns a prior federal judgment—the arbitration award confirmed in Arrowhead I. See Arrowhead I at Doc. 39. Consequently, the court will deny Lincoln General's motion.

---

[1] Lincoln General submits that the court should follow Second Circuit precedent in the instant matter. The Third Circuit's narrow exception—that questions of *res judicata* regarding a federal judgment are for the court, not the arbitrator—is in direct contradiction with the Second Circuit's holding in United States Fire Ins. Co. v. Nat'l Gypsum Co.,101 F.3d 813, 817 (2d Cir. 1996). See also Citigroup, Inc. v. Abu Dhabi Investment Auth., 776 F.3d 126, 128-133 (2d Cir. 2015). The Third Circuit court in Olick expressly rejected the Second Circuit's National Gypsum decision. Olick, 151 F.3d at 137-139 (citing Tel. Workers Union of N.J. v. N.J. Bell Tel. Co., 584 F.2d 31, 33 (3d Cir. 1978)).

**IV. Conclusion**

Lincoln General's motion (Doc. 28) to compel arbitration will be denied. An appropriate order shall issue.

                    /S/ CHRISTOPHER C. CONNER
                    Christopher C. Conner, Chief Judge
                    United States District Court
                    Middle District of Pennsylvania

Dated:    October 5, 2016